GEORGE W. MILES ET AL. v. FRANCIS A. DANA.

Delivered April 30, 1896.

1. **Citation by Publication—Judgment by Default—Next Term of Court.**
A citation by publication was duly made returnable to an ensuing term of court which began on the first Monday in August. After the court had convened for the August term, an act of the legislature took effect which provided that the terms of that court should begin on the second Monday after the first Mondays in July and January, and the court thereupon reconvened for the summer term. Held, that such reconvened term could not be considered as the "next succeeding term," at which judgment by default could, under the statute, be entered upon the citation by publication

2. **Same—New Trial Within Two Years—Equitable Grounds.**
Where judgment by default has been taken upon service of citation by publication, the desendant's motion for new trial may, under the statute, be filed at any

time within two years, and it is immaterial that it is numbered and docketed as a separate suit; and where it appears that the defendant has a meritorious defense, and that he had not actual notice of the pendency of the suit when the default judgment was entered, and that the person who made the affidavit for publication, stating that defendant's place of residence was unknown, could readily have ascertained that fact, a new trial should be granted.

**3. Administrator's Deed—Ancient Instrument—Presumptions.**

Where an administrator's deed is fifty years old, and it is shown that the probate records relating to the estate have all been destroyed by fire, it will be presumed from the recitals in the deed and other circumstances that such administrator was duly authorized by the court to sell the land and execute the deed, and that another person who was appointed joint administrator either failed to qualify or resigned as such.

**4. Same—Confirmation of Sale.**

The law in force in 1846 did not, it seems, require that a sale of land by an administrator under order of court should be confirmed, but if it did, such confirmation would be presumed after the lapse of fifty years and the destruction of the probate records by fire.

**5. Same—Description of Land—County—Judicial Notice.**

An administrator's deed fifty years old described the land as part of a headright league situated in Liberty County, but did not specify the State or Republic of Texas. Held, that the omission was not material, as the court would take judicial notice that Liberty County was, in 1846, a part of the Republic of Texas.

APPEAL from Liberty. Tried below before Hon. CHARLES F. STEVENS, Special Judge.

*Lanier, Kirby & Martin,* and *Perryman, Gillespie & Bullitt,* for appellants.

*Coleman & Ross,* for appellees.—1. There being no evidence that Eliza P. Coit continued to act as co-administratrix of the estate of D. P. Coit, or that she ever acted as such after her appointment, the presumption arises, since the records have been destroyed, that she failed to qualify as co-administratrix, or having qualified, she resigned, and W. C. Abbott was left sole administrator. White v. Jones, 67 Texas, 638; Heirs of Logan v. Pierce, 66 Texas, 126; Baker v. Coe, 20 Texas, 430; Giddings v. Day, 84 Texas, 607; Harrison v. McMurray, 71 Texas, 122.

2. It has been shown that the records of Liberty County were destroyed by fire. It was not necessary that the order of confirmation be recited in the deed. Under the circumstances of this case a confirmation will be presumed. The deed recites the payment of the purchase money. Jones v. Taylor, 7 Texas, 240; Moody v. Butler, 63 Texas, 210; Neil v. Cody, 26 Texas, 289; Simmons v. Blanchard, 46 Texas, 266.

GARRETT, CHIEF JUSTICE.—On June 26, 1893, the appellants, George W. Miles, Walter F. Harris, Emily Harris, Eliza Senechal, Harriet Etter and W. S. Swilley, as plaintiffs, brought a suit of trespass to try title in the District Court of Liberty County against the appellee Francis E. Dana and the Singer Manufacturing Company as defendants, for the recovery of one-third of a league of land situated in Liberty County, Texas, a part of the league originally granted to William Swail. They

alleged that the residence of said Francis E. Dana and the domicile of the Singer Manufacturing Company were unknown to them. On the same day the plaintiff, W. S. Swilley, filed in the suit an affidavit in writing that he was one of the plaintiffs, and that the place of residence or domicile of neither of the defendants was known to him, and asked for citation by publication according to law. Citation was issued on June 26, 1893, in due form, and was caused to be published by the sheriff in a newspaper published in Liberty County for four successive weeks, and due return thereof was made on August 4, 1893. The court appointed an attorney of the court to represent the defendants, and he filed an answer in their behalf on August 16, 1893, in which he demurred to the petition and pleaded not guilty. On August 25, 1893, Ellen Lee Mason, joined by her husband, James M. Mason, filed a petition in intervention in the cause by which they sought to recover the land for themselves as the devisees of James Morgan, deceased. The cause was tried September 1, 1893, when the plaintiffs put in evidence a conveyance of the land to Daniel P. Coit, through administration of the estate of William Swail; showed that they, except Swilley, were the heirs of Coit and his surviving wife, and conveyances by Coit's heirs to B. F. Cameron and W. S. Swilley on April 24, 1893, and Cameron to Swilley June 24, 1893. Evidence offered by the Masons was excluded by the court on the objection of plaintiffs. The attorney for the defendants introduced in evidence a sheriff's deed to J. G. Minter which undertook to convey the land to him as the property of W. C. Abbott; also a deed from Minter to the Singer Manufacturing Company; whereupon the court rendered judgment in favor of the plaintiffs for the land sued for. The intervenors excepted and gave notice of appeal, which they perfected. A statement of facts was filed in the cause on September 1, 1893. The judgment against Ellen Lee Mason and her husband was afterwards affirmed on certificate by this court on February 8, 1894.

Francis E. Dana, the appellee, filed an application in the District Court of Liberty County on May 18, 1894, for a new trial of said cause, notice of which he caused to be served upon the appellants and the Singer Manufacturing Company and Ellen Lee Mason and her husband James M. Mason. His application was numbered and docketed as a separate suit. He set out the proceedings ending in the judgment against him for said land; averred that he had never been served with a citation in the suit, and had no notice whatever of the pendency thereof until long after the rendition of the judgment therein; that he was a business resident of Kings County, New York, and had an agent in Harris county, Texas, and that the whereabouts of the Singer Manufacturing Company and its agents were notorious, all of which was either known to the plaintiffs or might have been acertained by the use of reasonable diligence; that the judgment was rendered at the first term of the court after the citation was issued, and that he had no opportunity to appear and defend himself, or appear by counsel of his own selection; that he was the owner in fee simple of the land and had a good defense

to the suit, and set out facts to show that the heirs of Daniel P. Coit had been divested of their title to the land by sale thereof in the administration of the estate of said Coit, as well as to show title in himself. The Singer Manufacturing Company and Ellen Lee Mason and her husband answered the application for a new trial by disclaiming any interest in the land. The appellants demurred thereto, made a general denial of its allegations and pleaded not guilty and specially the proceedings and judgment already had and obtained by them.

Upon a hearing of the appellee's application and a new trial of the cause in the court below, appellee obtained a judgment for the land.

In addition to the facts already stated, it appeared that W. S. Swilley who made the affidavit for publication was a sub-agent for the sale of the land in controversy as the property of the appellee, having been employed for that purpose by appellee's agent in Houston, Harris County, and that when he made the affidavit he knew that appellee was represented by Harrell & Moore, of Houston. In a letter to Harrell & Moore, dated March 24, 1893, he stated that Dana's title was not good, and suggested that if he had other title papers they should be recorded.

The court house of Liberty county was burned in the year 1872, and all the records, including the records of all the courts and file papers were destroyed, except two volumes of deed records. Another fire occurred in 1874, when all the records were destroyed.

The land in controversy is the lower one-third of the league of land situated in Liberty County, Texas, granted to William Swail. It was conveyed by the administrator of Swail to Daniel P. Coit, who was common source of title.

Daniel P. Coit died seized of the land in controversy, and letters of administration were granted upon his estate in the Probate Court of Liberty County in the year 1842, on June 27, to his widow, Eliza Coit, and W. C. Abbott. The land was sold as the property of the estate in due course of administration by order of the court and conveyed to James Morgan by a deed executed by W. C. Abbott, as administrator of said estate, on the 7th day of April, 1846, and duly acknowledged by said Abbott May 20, 1846, and filed for record and recorded on said date in the deed records of Liberty County. In support of this conclusion there was introduced in evidence a copy of an order made by George W. Miles, judge of probate for Liberty County, Republic of Texas, made June 27, 1842, appointing Eliza Coit and W. C. Abbott administratrix and administrator of Daniel P. Coit, late of said county, deceased; also the original deed above mentioned, which contained the recital that, "I, W. C. Abbott, administrator of the estate of D. P. Coit, deceased, being thereunto duly authorized by the Hon. Probate Court for the County of Liberty by an order bearing date the 10th day of March, 1846, proceeded to sell the therein described third of a league of land, and James Morgan having bid the sum of two thousand dollars, the said sum being the highest bid; be it therefore known, that for and in con-

sideration of the sum of two thousand as aforesaid, to me in hand paid
by said James Morgan, that I, said W. C. Abbott, administrator as
aforesaid, have given, granted," etc.   Eliza Coit, George W. Miles,
W. C. Abbott and James Morgan are all dead.   Eliza Coit became the
wife of George W. Miles, and died after him, in 1866.   The copy of
the order of the probate judge appointing Eliza Coit and W. C. Abbott
administrators of D. P. Coit, deceased, was found in the possession of
the widow of W. C. Abbott, among his papers.   Appellee had paid all
taxes of the land, and the heirs of Daniel P. Coit and his wife Eliza
Coit had not paid taxes thereon nor asserted any title thereto until
April, 1893.

James Morgan conveyed the land in controversy, along with several
other tracts, to John Haggerty, A. H. Dana and Thomas E. Davis of
the state and county of New York, by his deed dated February 15, 1856,.
which was proved for record.

Haggerty, Dana and Davis, grantors in the foregoing deed, joined by
several other persons purporting to be stockholders of the New Wash-
ington Association, an incorporated company of the state of New York,
filed a petition in the District Court of Harris County against William
Abbott and others, as stockholders also, to have said land sold as the
property of said association for the payment of certain debts adjudged
in favor of some of the plaintiffs against said association in a suit in
New York.   The petition showed that Haggerty, Dana and Davis were
trustees for the association and held the land as such.

On December 3, 1859, a judgment was rendered in said suit ordering
the sale by sheriff as under execution of the lands belonging to said as-
sociation for the payment of the debts set out in the judgment; and on
May 21, 1860, it was ordered by the court that further sales should be
made for one-fourth cash and the balance on twelve months' credit, at.
eight per cent interest.   The execution docket of Harris County showed
the issuance of an order of sale on June 27, 1860, directed to the sheriff
of Liberty County.   The land in controversy was sold by the sheriff of
Liberty County on the first Tuesday in November, 1860, to the appellee,
Francis E. Dana, as appears from the sheriff's deed put in evidence.
This deed was duly acknowledged and was filed for record in the record
of deeds for Liberty County on December 13, 1870, and again on
November 28, 1888, after the destruction of the records.

From the view taken of the case by this court, it is not necessary to
state the substance of the petition and orders of the court in the suit in
Harris County, or the entries on the execution docket of the order of
sale issued to Liberty County, or of the sheriff's deed to Francis E. Dana
for the land in controversy, more fully than has been done.   But, as it
is contended by the appellants that the above stated proceedings were
not sufficient to convey the title to appellee, and it is deemed by them ma-
terial to a recovery by him that he should show title in himself, we refer
to the copies in the record and make them a part of our conclusions, for
consideration by the Supreme Court, if necessary.

The judgment obtained by the appellants against appellee for the land in controversy was upon service by publication. His residence was alleged to be unknown, and the affidavit of Swilley, made as a basis for the service of citation by publication, stated this ground. The citation was issued on June 26, 1893, and cited appellee to appear at the next term of the District Court of Liberty County, to be holden at the court house thereof in the town of Liberty on the first Monday in August, 1893, which was the day then fixed by law for the next regular term of the court. By an act of the 23rd Legislature, which took effect on the 8th day of August, 1893, the time of holding court in Liberty County was changed to the fifth Monday after the second Mondays in January and July each year. Gen. Laws, 23rd Leg., p. 164; Const., art. 3, sec. 39; Halbert v. San Saba Live Stock Association, 34 S. W. Rep. 639. This was after the court had convened for the August term under the old law. When the new law took effect, it seems that the court reconvened for the summer term under it, and then rendered the judgment which the appellee sought to set aside. This term of the court cannot be regarded as the term next succeeding that to which the citation by publication was returnable; and the appellee had until the appearance day of that term to file his answer. Rev. Stats. (1879), art. 1264. If the appellee had brought the judgment before this court on writ of error, it should have been reversed on that account.

But the statute provides that "in cases in which judgment has been rendered on service of process by publication, where the defendant has not appeared in person or by an attorney of his own selection, a new trial may be granted by the court upon the application of the defendant for good cause shown, supported by affidavit, filed within two years after the rendition of such judgment." Rev. Stats. (1879), art. 1373. So it was not necessary for the appellee to take the case up by writ of error in order to set the judgment aside, and thereby rest his chance of a reversal upon such error as might appear of record. He could apply to the court for a new trial within two years from the rendition of the judgment, and his application need not have been numbered and docketed as a separate suit. For good cause shown the court should grant him a new trial. The same strictness does not apply to an application for a new trial in a publication suit under the statute as to a suit for new trial after adjournment of the court when there has been personal service on the defendant, since the latter proceeding is governed by the principles of equity. Mussina v. Moore, 13 Texas, 7; Kitchen v. Crawford, 13 Texas, 516; Snow v. Hawpe, 22 Texas, 168; Schleicher v. Markward, 61 Texas, 99. The effect of the statute is to allow two years in which to make a motion for a new trial in such cases. It would seem that the fact that judgment was taken against appellee at the first term of the court ought to be sufficient of itself to entitle him to a new trial when it is shown upon his oath that he had no notice whatever of the pendency of the suit. But in addition to this fact, it must

be considered that while the affidavit for publication may have been literally true, yet the party making it was himself an agent for the sale of the land as appellee's property, at the appointment of persons who represented the appellee, and could have informed him of his residence. Yet it is not necessary to hold that a new trial should have been granted, independent of the fact of a meritorious defense on the part of appellee. This must be a defense, however, for we do not agree with counsel for appellants that the burden of proof rested on the appellee to show a good title in himself. It was sufficient if he could show that the appellants were not entitled to recover. This we think appellee did, and, in addition thereto, connected himself with the title by evidence which may or may not have vested in him an absolute title sufficient to enable him to recover upon the strength thereof. We deem it unnecessary to decide whether or not appellee had a title sufficient to enable him to recover as plaintiff in a suit for that purpose.

The original deed from W. C. Abbott, as administrator of the estate of Daniel C. Coit, deceased, was executed fifty years ago. It recites that the administrator was authorized by the probate court of Liberty County to sell the land. All of the records of the county had been destroyed by fire, but the appointment of Abbott as administrator of the estate was shown by the copy of an order of the probate judge, found among his papers after his death, in the possession of his widow. Although this order showed that Eliza Coit had been appointed administratrix with him, it will be presumed from the lapse of time, and the recital in the deed and other circumstances that the land was duly sold in the course of administration and that Abbott had been ordered by the court to execute the deed alone. The George W. Miles whom Eliza Coit married after the death of Daniel P. Coit was probably the probate judge, and she may have resigned as administratrix, or had never qualified, or Abbott alone was ordered to make the sale for that reason. It was further shown by the refusal of two of the heirs of Daniel P. Coit, who were plaintiffs, to answer interrogatories propounded to them by the appellee, that they had never asserted any claim to the land nor paid taxes thereon. Appellee acquired his title in 1860 and has paid all taxes thereon ever since. The deed fails to recite that the sale had been confirmed by the probate court, but the law in force at the time does not seem to have required that this should be done. Hart. Dig., arts. 1016-1018; Act of February 5, 1840. But confirmation would also be presumed from the execution of the deed, if it should be held necessary to have the sale confirmed by the court as a judicial sale. The law at the time did not require the order of confirmation to be recited in the deed. It is sufficiently clear from the evidence that the administration was pending in Liberty County, Republic of Texas, and that the land was situated in Texas. Although the administrator's deed does not describe the land as situated in Texas, it describes it as situated in Liberty County, and the court judicially knows that Liberty County was then a county in the Republic of Texas. The copy of the order

appointing the administrators also has the caption, "Republic of Texas, County of Liberty."

The judgment of the court below will be affirmed.

*Affirmed.*